**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____  )
                                 )
CENTER FOR INTERNATIONAL         )
ENVIRONMENTAL LAW,               )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     **Civil Action No. 01-498 (RWR)**
                                 )
OFFICE OF THE UNITED STATES      )
TRADE REPRESENTATIVE, <u>et al.</u>,  )
                                 )
          Defendants.            )
_____  )

<u>MEMORANDUM OPINION AND ORDER</u>

The Center for International Environmental Law ("CIEL")
brought this action against the Office of the United States Trade
Representative, and Susan C. Schwab,[1] in her official capacity as
the United States Trade Representative (collectively "USTR"),
seeking documents under the Freedom of Information Act ("FOIA"),
5 U.S.C. § 552.  The parties have filed cross-motions for summary
judgment.  Although there is no longer a dispute over a majority
of the documents, USTR's affidavits in support of its motion for
summary judgment are not sufficient to justify withholding the
remaining documents at issue and USTR will be ordered to
supplement those affidavits.  Accordingly, USTR's motion for
summary judgment will be granted in part and denied in part and
CIEL's motion for summary judgment will be denied.

_____

[1]     Susan C. Schwab is substituted for Robert B. Zoellick
under Fed. R. Civ. P. 25(d)(1).

-2-

BACKGROUND

CIEL is a non-profit public interest organization providing environmental legal services, some of which focus on the impact of trade policy on the environment. (Compl. ¶¶ 4-5.)  It filed a FOIA request with USTR seeking documents relating to sessions of the Negotiating Group on Investment ("NGI") for the Free Trade Agreement of the Americas ("FTAA").[2]  The NGI has been working on drafting an international agreement (the "Agreement") to establish a free trade area among approximately thirty-four participating nations in the western hemisphere.  In the process of these negotiations, NGI meetings were held during which the USTR provided to negotiators documents containing the attending foreign governments' proposed text and commentary for the investment portion of the Agreement. (Compl. ¶ 9.)

USTR's response to CIEL's FOIA request identified forty-six documents in its office responsive to CIEL's request but withheld

---

[2]     CIEL requested, inter alia:

[1] United States' documents circulated or tabled during the fifth and sixth sessions of the FTAA Negotiating Group on Investment held in February and May 2000, respectively.  This would include both proposed text and any commentary, including but not limited to a discussion of what is meant by the phrase 'in like circumstances.'

[2] All documents prepared during the inter-agency process of the United States coming to positions reflected in documents referred to above.

(Compl. ¶ 10.)

-3-

all forty-six documents by relying upon 5 U.S.C. § 552(b)(5),
which exempts from disclosure inter-agency and intra-agency
communications protected by the deliberative process privilege.
(Compl. ¶ 11.)  USTR asserts that it conducted a search
reasonably calculated to discover all responsive documents, and
CIEL does not contest that assertion.

CIEL timely appealed to the USTR's Freedom of Information
Appeals Committee, which affirmed the refusal to disclose the
documents and denied CIEL's request to provide either the factual
portions of the documents or a fuller explanation for withholding
the documents.  (Compl. ¶¶ 12, 13.)  After a change in the
presidential administration, the USTR, upon CIEL's request,
revisited its decision but found no basis for changing its
initial decision.  (Compl. ¶ 14.)  Following the unsuccessful
administrative appeal, CIEL initiated the instant action and
moved for production of a <u>Vaughn</u> index.  Pursuant to an order by
a magistrate judge, USTR provided a <u>Vaughn</u> Index and now moves,
and CIEL cross-moves, for summary judgment.

Over the course of the proceedings, the parties have reduced
the number of documents at issue from forty-six to four.  USTR
argued that forty-one of the requested documents are exempt from
disclosure under the deliberative process privilege, 5 U.S.C.
§ 552(b)(5), and CIEL withdrew its claim that withholding those
documents was improper.  Thus, summary judgment will be granted

-4-

in USTR's favor as to those forty-one documents.  Additionally,
USTR has released another document to CIEL.  (Defs.' Mot. Summ.
J., Decl. of Sylvia Harrison (Harrison Decl.) at 16.)

Only documents 1, 8, 38, and 43, which USTR argues are
protected from disclosure under 5 U.S.C. §552(b)(1), remain in
dispute.  Each of these documents was shared with the FTAA
negotiating group on investment.  Document 1 explains the United
States' proposed position on the phrase "in like circumstances."
(Defs.' Mot. Summ. J., Ex. 5, Vaughn Index ("Vaughn Index") ¶ 1.)
Document 8 delineates the United States' position on the
definitions of investment, investor, and other terms.  (Vaughn
Index ¶ 8.)  Document 38 describes the United States' position on
transparency in the investment context.  (Vaughn Index ¶ 38.)
Finally, Document 43 sets forth the position on the terms
"national treatment" and "most favored nation treatment."
(Vaughn Index ¶ 43.)  These four documents were classified at the
"confidential" level.  (Defs.' Mot. Summ. J., Decl. of Peter B.
Davidson ("Davidson Decl.") at 5.)

## DISCUSSION

Summary judgment is appropriate when there exists no genuine
issue as to any material fact and the moving party is entitled to
a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The
burden falls on the moving party to provide a sufficient factual
record that demonstrates the absence of such a genuine issue of

material fact.  <u>See</u> <u>Beard v. Banks</u>, 126 S. Ct. 2572, 2578 (2006).

A court must draw all reasonable inferences from the evidentiary

record in favor of the non-moving party.  <u>See</u> <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  In a FOIA suit, an agency

is entitled to summary judgment upon demonstrating that no

material facts are in dispute and that all information that falls

within the class requested either has been produced, is

unidentifiable, or is exempt from disclosure.  <u>Students Against</u>

<u>Genocide v. Dep't of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001);

<u>Weisburg v. Dep't of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980).

A district court must conduct <i>de novo</i> review of the record in a

FOIA case, and the agency resisting disclosure bears the burden

of persuasion in defending its action.  5 U.S.C. § 552(a)(4)(B);

<u>see also</u> <u>Long v. Dep't of Justice</u>, 450 F. Supp. 2d 42, 53 (D.D.C.

2006).

     The FOIA requires agencies to comply with requests to make

their records available to the public, unless information is

exempted by clear statutory language.  5 U.S.C. §§ 552(a), (b);

<u>Oglesby v. Dep't of Army</u>, 79 F.3d 1172, 1176 (D.C. Cir. 1996).

Although there is a "strong presumption in favor of disclosure,"

<u>Dep't of State v. Ray</u>, 502 U.S. 164, 173 (1991), there are nine

exemptions to disclosure set forth in 5 U.S.C. § 552(b).  These

exemptions are to be construed as narrowly as possible to provide

the maximum access to agency information based on the overall

-6-

purpose of the Act.  <u>Vaughn v. Rosen</u>, 484 F.2d 820, 823 (D.C. Cir. 1973).

Here, USTR must show that there is no genuine issue as to whether it properly invoked the statutory exemption authorized by § 552(b)(1) to withhold information, and that all non-exempt information that is reasonably segregable has been segregated and disclosed.  Exemption 1 protects from disclosure "matters that are (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]"  5 U.S.C. § 552(b)(1).  USTR justifies withholding the documents based on the classification criteria of Executive Order 12,958 which permits classification of information only if "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to national security . . . and . . . is able to identify or describe the damage."  60 Fed. Reg. 19,825, 19,826 § 1.2(a)(4).

Because the party requesting disclosure is at a disadvantage to argue misapplication of an exemption given that it cannot know the precise contents of the documents withheld, a factual dispute may arise regarding whether the documents actually fit within the cited exemptions.  <u>Vaughn</u>, 484 F.2d at 823-24.  To enable the requesting party an opportunity to effectively challenge the

-7-

applicability of the exemption and the court to properly assess
its validity, the party in possession of the materials must
explain the specific reason for the agency's nondisclosure.  Id.
at 826; see, e.g., Oglesby, 79 F.3d at 1176 ("The description and
explanation the agency offers should reveal as much detail as
possible as to the nature of the document, without actually
disclosing information that deserves protection.").  Although
this explanation may include a detailed description of each
document being withheld and take the form of a Vaughn index, this
index is not always mandated and the government may satisfy its
burden by other means.  Voinche v. Fed. Bureau of Investigation,
412 F. Supp. 2d 60, 65 (D.D.C. 2006) (noting that because "courts
have repeatedly held that it is the function of a Vaughn index
rather than its form that is important, . . . an agency does not
have to provide an index per se").  Regardless of the form of the
government's declaration, it must show why exemption is
appropriate and conclusory statements and generalized claims of
exemption are insufficient to justify withholding.  Vaughn, 484
F.2d at 826; see also Mead Data Cent., Inc. v. Dep't of Air
Force, 566 F.2d 242, 251 (D.C. Cir. 1977) ("[T]he burden which
the FOIA specifically places on the Government to show that the
information withheld is exempt from disclosure cannot be
satisfied by the sweeping and conclusory citation of an exemption
. . . .").  Where disclosures are not sufficiently detailed to

-8-

permit a meaningful *de novo* review, a court may order the agency
to submit more detailed disclosures. <u>Voinche</u>, 412 F. Supp. 2d at
65.

The D.C. Circuit has set forth specific requirements to
justify withholding documents under Exemption 1:

> the agency affidavit must, for each redacted
> document or portion thereof, (1) identify the
> document, by type and location in the body of
> the documents requested; (2) note that
> Exemption 1 is claimed; (3) describe the
> document withheld or any redacted portion
> thereof, disclosing as much information as
> possible without thwarting the exemption's
> purpose; (4) explain how this material falls
> within one or more of the categories of
> classified information authorized by the
> governing executive order; and (5) explain how
> disclosure of the material in question would
> cause the requisite degree of harm to the
> national security.

<u>King v. Dep't of Justice</u>, 830 F.2d 210, 224 (D.C. Cir. 1987).
Even if Exemption 1 applies, because "[t]he focus of the FOIA is
information, not documents, . . . an agency cannot justify
withholding an entire document simply by showing that it contains
some exempt material.  It has long been a rule in this Circuit
that non-exempt portions of a document must be disclosed unless
they are inextricably intertwined with exempt portions." <u>Mead
Data</u>, 566 F.2d at 260; <u>see also</u> <u>Vaughn</u>, 484 F.2d at 825; 5
U.S.C. § 552(b) (requiring disclosure of "any reasonably
segregable portion" of an otherwise exempt record).

-9-

Although "in conducting *de novo* review in the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record," <u>Wolf v. Cent. Intelligence Agency</u>, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal citations omitted), when the agency's affidavit is inadequate, summary judgment may be withheld and the agency required to provide a new declaration.  <u>Cf.</u> <u>Campbell v. Dep't of Justice</u>, 164 F.3d 20, 31 (D.C. Cir. 1998) (remanded because declaration provided only a sweeping conclusory assertion of anticipated harm to national security and instructed the district court to require a new declaration); <u>King</u>, 830 F.2d at 225 (remanded because affidavits inadequately described the redacted material and did not explain with sufficient specificity how disclosure would harm national security).

USTR makes two basic claims regarding the applicability of Exemption 1.  It argues that the four documents are properly classified as confidential because they contain information that might harm foreign relations and national security, and because these documents pertain to negotiations that were expected to be maintained in confidence.  (Def.'s Mot. Summ. J. at 6-7.)

First, USTR contends that the release of this information could reduce the chances of the United States' proposals being adopted.  (<u>See</u> Def.'s Reply to Pl.'s Mot. Summ. J. ("Def.'s

-10-

Reply"), Decl. of Regina Vargo ("Vargo Decl.") ¶ 9.)  USTR
explains that foreign investment activities are highly
controversial issues for many of the United States' trading
partners.  It reasons that publishing the United States' proposal
would allow the proposal to become a target for constituencies of
the United States' negotiating partners who would pressure their
governments not to adopt it, thereby reducing the negotiation
flexibility of those partners.  Ultimately, USTR asserts,
disclosure could harm both the United States' near-term relations
with foreign governments and its long-term ability to obtain
agreements that best serve its economic and diplomatic interests.
(Vargo Decl. ¶ 9.)

     CIEL contests that harm will result from public disclosure
because the averments contained in the Vargo Declaration do not
identify or describe with sufficient specificity how disclosure
of the documents will cause the alleged harm to national
security.  Also, CIEL argues that because these kinds of
documents have been disclosed in the past during other treaty
negotiations, there is no reason to suspect that harm will now
result.

     Alternatively, USTR argues that disclosure of the
information could create confidentiality concerns for the United
States' hemispheric trading partners.  (Davidson Decl. ¶ 4.)
USTR submitted the declaration of Peter Davidson, General Counsel

-11-

to the USTR, which states that under the operating rules of FTAA,
negotiating countries "are expected to maintain each other's
proposals in confidence." (Id. ¶ 2.)  CIEL disputes this
assertion regarding confidentiality because use of the operating
rules to justify applicability of Exemption 1 would allow the
USTR to make pre-emptive confidentiality rules and avoid judicial
scrutiny of document exclusion.  In addition, the operating
rules, which USTR does not suggest are binding, negate contrary
obligations arising out of federal law.  (Pl.'s Mot. Summ. J. at
9.)

The USTR has not proved the appropriateness of withholding
the four documents under Exemption 1.  USTR principally relies on
declarations from Davidson and Regina Vargo, neither of which
demonstrates a strong nexus between the release of the documents
and harm to United States foreign policy.  Although both
declarants state that disclosure would hamper the United States'
and its trade partners' ability to engage in fruitful
negotiations regarding a free trade agreement, there is no
showing that reduced negotiation flexibility would cause the
"requisite degree of harm" to the economic and security interests
of the United States.[3]  King, 830 F.2d at 224.  Additionally, the

---

[3]  See Davidson Decl. ¶ 4 ("[D]isclosure of these documents
would create policy obstacles for our hemispheric trading
partners which would seriously affect their ability to conclude a
free trade agreement . . . ."); Vargo Decl. ¶ 8 ("[M]any of our
hemispheric trading partners, and certain of their

-12-

Vargo declaration, which was submitted following the magistrate

judge's order to provide a declaration describing with

specificity how disclosure of each document would harm national

security (Pl.'s Mot. Summ. J. at 10), contains sweeping

conclusory statements[4] of the harm USTR expects will result but

fails to provide the basis of that conclusion.  Finally, although

USTR suggests that the operating rules of FTAA negotiations have

a preclusive effect, it provides no specific information about

the nature of these rules, including whether the United States'

agreement to produce its proposals, but refusal to provide those

of its negotiating partners, constitutes a breach of the rules.

Failing to prove that there is sufficient justification for

classifying the documents as confidential, USTR has not

established the applicability of Exemption 1.[5]  Cf. Wolf, 473

---

constituencies, have strongly held views regarding the role that
foreign investment should play in their national economies
. . . .  For that reason, it will be difficult for many
participating countries to accept some or all of the rules and
principles that the United States is seeking through the FTAA
investment negotiations unless they have latitude to negotiate.")

[4]  The Vargo declaration uses conclusory language such as
"for a variety of reasons" and "controversial" without providing
facts to indicate what the reasons are or to show the basis for
the defendants' conclusion that the subjects of the negotiations
are controversial.  The declaration submitted by USTR does not in
itself provide a reasonable basis to conclude that the agency has
sufficient justification for classifying the documents as
confidential.

[5]  Although in a supplemental filing, USTR points to Ctr.
for Int'l Environ. Law v. Office of the U.S. Trade Rep. to
further justify withholding the documents, the record submitted

-13-

F.3d at 376 (noting that agency's affidavits explaining that
disclosure of records regarding foreign nationals might
potentially "reveal targets of CIA surveillance and . . . CIA
methods" are sufficient to justify withholding under
Exemption 1); Public Citizen v. Dep't of State, 276 F.3d 634, 644
(D.C. Cir. 2002) (affirming the district court's entry of summary
judgment for the government on the basis of its declaration that
disclosure of the withheld information "could enable foreign
governments or foreign persons or entities opposed to United
States foreign policy objectives to identify U.S. intelligence
activities, sources or methods").

Even if Exemption 1 is found to justify withholding the
documents, USTR may not automatically withhold the full document
as categorically exempt without disclosing any segregable
portions.  USTR asserts that none of the withheld documents
contains segregable material.  However, the record is

_____

in that case was more detailed than the one filed here.  237 F.
Supp. 2d 17, 23 (D.D.C. 2002).  In the prior case, CIEL requested
documents pertaining to the United States-Chile Free Trade
Agreement and USTR properly withheld the documents pursuant to
Exemption 1.  See Ctr. for Int'l Environ. Law, 237 F. Supp. 2d at
32.  USTR provided a declaration explaining not only that trade
policy issues are "often sensitive and controversial," but also
that disclosure of U.S. proposals would expose U.S. legal policy
and strategic analysis along with the differing agency
viewpoints, permitting other governments to gauge the strength of
U.S. negotiating positions and exploit interagency differences.
Here, the Vargo declaration fails to draw a similar connection
between the disclosure and the alleged harm that would result
from disclosure.

-14-

insufficient as to this point because USTR does not explain which underlying facts in the documents are confidential in nature. See Voinche, 412 F. Supp. 2d at 69 (noting that a government agency must provide more than "conclusory statements as to the impossibility of segregating any portions of the released material without even citing specifically which withheld documents it was referring to").  Without a more detailed description of the contents of the documents, it is not possible to ascertain if, as stated by USTR, the documents consist of solely legal analysis and contain no factual material. Accordingly, a genuine issue of material fact remains as to whether the documents should be classified as confidential and summary judgment cannot be entered for either party.  Cf. Long, 450 F. Supp. 2d at 53-54 (holding that a court may award summary judgment solely on the affidavits and declarations provided by the agency as long as the justification for invoking the exemptions is specifically detailed).

Finally, CIEL argues that even if Exemption 1 applies, USTR has waived its right to invoke the exemption because there has been a prior public disclosure of similar information on the internet in the form of a draft of the investment portion of the FTAA.

Prior disclosure of similar information does not suffice as a general waiver of a FOIA exemption; instead, it must be proven

that the information requested has been officially released into the public domain.  See Wolf, 473 F.3d at 378.  "'[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'"  Id. (quoting Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983). "The fact that some 'information resides in the public domain does not eliminate the possibility that further disclosures can cause harm[.]'"  Students Against Genocide, 257 F.3d at 835 (quoting Fitzgibbon v. Cent. Intelligence Agency, 911 F.2d 755, 766 (D.C. Cir. 1990)).  Thus, "while the logic of FOIA postulates that an exemption can serve no purpose once information . . . becomes public, we must be confident that the information sought is truly public and that the requestor receive no more than what is publicly available before we find a waiver."  Students Against Genocide, 257 F.3d at 836 (internal quotations omitted).

Although the publicly disclosed draft contains proposals for each provision of the Agreement, the draft does not disclose the identity of the negotiating party proffering each proposal.  CIEL has not met its burden of proving that the same information has already been released in the public domain.  The identity of the negotiating parties has been kept confidential and whether it must be released must await a more detailed explanation of the possible harm that will result from disclosure.

-16-

CONCLUSION AND ORDER

A genuine issue of material fact exists as to applicability of Exemption 1 and the extent to which a potential harm to the United States' negotiating efforts or breach of confidentiality may result from disclosure.  Therefore, neither motion for summary judgment is supported by sufficient facts in the record to warrant judgment as a matter of law.  The parties' requests for summary judgment will be denied and the USTR will be ordered to produce additional declarations addressing how disclosure will threaten United States' foreign relations and national security and the nature of any confidentiality agreement among the FTAA negotiating parties.  Accordingly, it is hereby

ORDERED that USTR's motion [33] for summary judgment be, and hereby is, GRANTED as to documents 2-7, 9-37, 39-42, and 44-46 and DENIED without prejudice as to documents 1, 8, 38, 43.  It is further

ORDERED that CIEL's motion [34] for summary judgment be, and hereby is, DENIED without prejudice.  It is further

ORDERED that within 45 days of the entry of this order, USTR file supplements to its disclosures in support of its motion for summary judgment.

SIGNED this 5th day of September, 2007.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge